**SO ORDERED.**

**SIGNED this 21 day of June, 2010.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARK C. FOY, | ) | Case No. 09-10608 |
| CLAIRE S. FOY, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| THE CINCINNATI  INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 09-5090 |
| | ) | |
| MARK C. FOY, | ) | |
| CLAIRE S. FOY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Creditor The Cincinnati Insurance Company (Cincinnati) moves for summary judgment on its complaint alleging that Debtors' debt to it should be excepted from Mark C. Foy's discharge pursuant to 11 U.S.C. § 523(a)(4).[1]

Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which this Court has subject matter jurisdiction, 28 U.S.C. § 157(b)(1) and §1334(b).

Summary Judgment Standards

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."[3] When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[4] In determining whether any genuine issues of material fact exist, the Court must construe the record in a light most favorable to the party opposing the summary judgment.[5] Once the Court

---

[1] Dkt. 35. Cincinnati's present motion only addresses its claim against Mark C. Foy.

[2] Fed. R. Civ. P. 56(c).

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[5] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.[6]

Findings of Fact

Between the stipulations in the pretrial order[7] and the summary judgment papers, the Court finds that the following facts are uncontroverted.

On April 19, 2005, Foy Construction Company, Inc. ("Foy Construction") contracted with the City of Hutchinson, Kansas ("City") to build an animal shelter for it ("the Project").[8] This contract required Foy Construction to procure performance and payment bonds to ensure completion of the Project and payment of subcontractors, suppliers, and laborers on the Project.[9] Mark C. Foy ("Foy") was the sole owner, director and officer of Foy Construction.[10]

On May 6, 2005, Foy Construction submitted an "Application for Contract or Proposal Bond" to Cincinnati with it as the bond's principal and the City as the beneficiary.[11] The application included an indemnity agreement.[12] Paragraph 28(4) of the Bond Agreement provides, in pertinent part, that:

---

[6] *E.E.O. C. v. Lady Baltimore Foods, Inc.*, 643 F.Supp. 406, 407 (D. Kan.1986) (Even if there are no genuine issue of material fact, the movant still has the burden to show it is entitled to judgment as a matter of law.).

[7] Dkt. 47.

[8] *See* Cincinnati's Memorandum In Support of Its Motion for Summary Judgment ("MSJ"), Statement of Uncontroverted Material Facts ("SOF") ¶1 and Debtor's Response in Opposition to MSJ.

[9] *Id.*, SOF ¶2.

[10] *Id.*, SOF ¶9.

[11] The Cincinnati Insurance Company Application for Contract or Proposal Bond ("the Bond Agreement"). *See also* SOF ¶4.

[12] Bond Agreement, ¶ 28.

[The Principal and its indemnitors] will indemnify [Cincinnati] and hold it harmless from and against any and all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of whatever kind or nature which [Cincinnati] may sustain or incur by reason or in consequence of having executed or procured the execution of the bond or bonds aforementioned and/or which [Cincinnati] may sustain or incur in making any investigation, in settling any claims or in defending or prosecuting any actions, suits or other proceedings which may be made or brought under or in connection therewith, and/or in recovering any of the covenants of this agreement...[13]

Paragraph 28(5) of the Bond Agreement states that:

[The Principal and its indemnitors] will hold all payments received for or on account of the contracts covered by such bond or bonds *as a trust fund* in which the Surety has an interest, for the payment of obligations incurred for labor, material, and services furnished to the Principal or to others in the prosecution of the work provided in such contracts or any extension or modifications thereof.[14]

Foy signed the agreement as president of Foy Construction, the bond's principal.[15] He also signed as indemnitor twice, once in his individual capacity and the other as president of Properties, Inc.[16] Foy's wife, Claire, signed the agreement as an individual indemnitor as well.[17]

That same day, Cincinnati issued Performance and Payment Bond No. B8866629 on behalf of Foy Construction, as Principal, to the City, as Obligee for the Project.[18]

Foy Construction received $620,841.00 in progress payments from the City.[19] Foy deposited

---

[13] *Id.,* ¶ 28(4).

[14] *Id.,* ¶ 28(5) (emphasis added).

[15] *Id.* at 5.

[16] *Id.*

[17] *Id.*

[18] MSJ, SOF ¶3.

[19] Pretrial Order, Stipulations ¶C.

these funds in Foy Construction's general operating account and did not segregate them.[20] Foy also deposited funds from other projects into his company's general operating account and paid costs from those projects out of that account.[21]

During the course of the Project and at all times relevant, Foy was solely responsible for the payment of subcontractors and suppliers on the Project.[22] Foy did not pay all of the subcontractors and suppliers on the Project.[23] As a result, Cincinnati received payment bond claims from subcontractors and suppliers.[24] Cincinnati paid $166,761.44 in bond claims on the Project and at the end of the Project, received $67,076.00 retainage from the City.[25] Cincinnati's net direct loss was $99,685.44. [26]

On February 7, 2007, Cincinnati filed suit against Foy and others in the United States District Court for the District of Kansas ("U.S. District Court") to recover its losses under the Bond.[27] On July 5, 2007, Foy consented to, and the U.S. District Court entered, judgment against the Foys and others in the amount of $125,559.52, which represents $99,685.44 in direct losses, $17,571.74 in attorneys' fees and loss adjustment expenses, and $8,302.24 in prejudgment interest ("the Consent

---

[20] MSJ, SOF ¶12.

[21] *Id.*, ¶13.

[22] *Id.*, ¶10.

[23] *Id.*, ¶15.

[24] *Id.*, ¶16.

[25] Pretrial Order, Stipulation ¶B.

[26] *Id.*

[27] *Id.*, ¶G.

Judgment").[28]

The Foys filed their Chapter 7 petition on March 12, 2009.[29] Cincinnati filed this adversary complaint seeking a determination that the Consent Judgment is nondischargeable under 11 U.S.C. § 523(a)(4) as a debt incurred by defalcation while acting as fiduciaries. Cincinnati now moves for summary judgment against Foy, who denies the existence of a fiduciary relationship between the parties.

<u>Analysis</u>

Section 523(a)(4) excepts from discharge "debts which are for ... defalcation while acting in a fiduciary capacity...." To except from discharge a debt for defalcation, the creditor must prove (1) the existence of a fiduciary relationship between the debtor and the objecting party, and (2) a defalcation committed by the debtor in the course of that fiduciary relationship.[30]

**A. Existence of a Trust**

A fiduciary relationship exists only where there is an express or technical trust.[31] Although federal bankruptcy law controls who is a fiduciary for purposes of § 523(a)(4), state law is relevant as to whether a trust relationship exists.[32] Cincinnati contends the Bond Agreement created an express trust. Under Kansas law, the elements necessary to create an express trust are: (1) an explicit declaration and intention to create a trust; (2) the transfer of lawful and definite property made by a person capable of making transfer thereof; and (3) a requirement to hold the property as

---

[28] *Id.*, ¶H.

[29] MSJ, SOF ¶ 21.

[30] *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997) (citation omitted).

[31] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371-72 (10th Cir.1996).

[32] *Id., see also In re Parker,* 264 B.R. 685, 700 (10th Cir. BAP 2001).

trustee for the benefit of a *cestui que trust* with directions as to the manner in which the trust funds

are to be applied.[33] The Court finds that the Bond Agreement contains the three requisite elements

for the creation of an express trust.[34]

> 1.     Explicit Declaration and Intent to Create a Trust

Foy argues that the Bond Agreement is not an express trust because the City, who was the

source of the funding for the purported trust, and was thus the trust settlor, never intended to create

a trust.[35] Foy also argues that Cincinnati's three-year delay in asserting a fiduciary relationship and

its conduct after paying the bond claims are evidence of Cincinnati's *mens rea* with respect to

whether the Bond Agreement created an express trust.[36] Foy's first argument misses the fact that

the right to receive the payments made by the City was Foy Construction's property. Both Foy

Construction and the Foys agreed to hold that property in trust for Cincinnati. Foy Construction,

not the City, is the settlor of the express trust created by the Bond Agreement. Although the City

is the payor of the progress payments, when Foy Construction received them, they belonged to Foy

---

[33] *Jennings v. Jennings*, 211 Kan. 515, Syl. ¶ 4, 507 P.2d 241 (1973). *See also Taliaferro v. Taliaferro*, 260 Kan. 573 (1996); *Pizel v. Pizel*, 7 Kan.App.2 388 (1982).

[34] Bankruptcy courts are split on whether an indemnity agreement containing a trust fund provision creates a fiduciary relationship between a surety and the contractor. *See International Fidelity Ins. Co. v. Herndon (In re Herndon)*, 277 B.R. 765 (Bankr. E.D. Ark. 2002) (indemnity agreement created a trust relationship between the parties); *Wright v. Gulf Ins. Co.*, 266 B.R. 848 (Bankr. E.D. Ark. 2001) (same); *Cumberland Surety Ins. Co., Inc. v. Smith (In re Smith)*, 238 B.R. 664 (Bankr. W.D. Ky 1999) (language in indemnity agreement signed by contractor in favor of surety sufficed to create express trust); *Gillespi v. Jenkins (In re Jenkins)*, 110 B.R. 74, 76-77 (Bankr. M.D. Fla.1990)(same). Compare *Shapiro v. Jacob's Electrical Construction, Inc.*, 293 B.R. 704 (Bankr. E.D. Michigan 2003) (under Michigan law, language in contract requiring debtor to hold funds received in trust insufficient to create express trust); *Custer v. Dobbs (In re Dobbs)*, 115 B.R. 258 (Bankr. D. Idaho 1990) (language that funds received were received "in trust" did not create express trust). *See also In re Construction Alternatives, Inc.*, 2 F.3d 670 (6th Cir. 1993) (under Ohio law, indemnity agreement did not create an express trust).

[35] Foy's Response to MSJ, Dkt. 55 at 10.

[36] Foy's Response to MSJ, Dkt. 55 at 14-15.

Construction and were burdened with Foy Construction's and Foy's fiduciary duty to retain for Cincinnati's benefit.

"The intent to create a trust can be manifested through a plain affirmative declaration by a person that he or she holds property for the benefit or use of another person."[37] By signing the Bond Agreement, Foy affirmatively agreed for himself and for Foy Construction to hold the progress payments for the benefit of the materialmen, laborers, and subcontractors on the Project, as well as the surety. The Court finds that the language in paragraph 5 of the Bond Agreement unequivocally expresses the intent to create a trust where it states: "[Foy] will hold all payments received for or on account of the contracts covered by such bond or bonds as a trust fund..." Thus, the agreement meets the first requirement.

2.      Definite Trust Property

Foy argues that the Bond Agreement is not an express trust because it does not contain definite trust property.[38] Foy contends that the Project's progress payments were not identifiable once they were commingled with his company's other funds. This argument is without merit. The agreement specifically identifies that "all payments received for or on account of the contracts covered by such bond or bonds" as the trust property. That the payments were "commingled" into Foy Constructions common accounts by Foy cannot be a defense to Cincinnati's assertion that Foy and Foy Construction held them in trust. Were that so, any trustee could commingle funds in his charge and exculpate himself from his fiduciary duties.

3.       Instructions Regarding Acceptance and Handling of Trust Property

The third element of an express trust is (1) a requirement to hold the property as trustee for

---

[37] *Taliaferro*, 260 Kan. at 584.

[38] Foy's Response to MSJ, Dkt. 55 at 15.

the benefit of a *cestui que trust* with (2) directions as to the manner in which the trust funds are to be applied. The Bond Agreement directs that the bond's principal and its indemnitors hold the progress payments "as a trust fund" "for the payment of obligations incurred for labor, materials, and services furnished" for the Project. This meets the third element of an express trust. Foy argues that the Bond Agreement is not an express trust because it did not impose "trust-like" duties upon him to segregate the progress payments.[39] Although directing the segregation of funds would have been prudent, it is not a predicate to finding that a trust has been formed.

**B.     Defalcation**

Foy argues that he did not commit defalcation because the purported trust document did not require him to segregate the Project's progress payments. Defalcation under § 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to him, whether intentional, willful, reckless, or negligent.[40] No mental state is required for defalcation.[41] The fact that the Bond Agreement did not specify that the funds be segregated has little to do with whether Foy could account for them. What matters is that he couldn't.

Foy Construction received over $620,000 in progress payments from the City. Foy effectively controlled these accounts by depositing funds into them and paying company expenses out of them. On behalf of Foy Construction, he agreed to hold those funds to pay for labor, materials, and services furnished on the Project. Foy concedes he caused Foy Construction to not pay all of the subcontractors and suppliers on the Project out of those funds.[42] This is a textbook

---

[39]  Foy's Response to MSJ, Dkt. 55 at 13.

[40]  *Storie,* 216 B.R. at 288.

[41]  *Id.* at 289.

[42]  *See* SOF ¶15 and Foy's Response to MSJ.

example of defalcation.[43]

Conclusion

The Court finds that there are no material facts in dispute and Cincinnati is entitled to judgment against Mark Foy as a matter of law. The Consent Judgment is excepted from Mark Foy's discharge pursuant to 11 U.S.C. § 523(a)(4). Cincinnati's motion for summary judgment is GRANTED. A separate Partial Judgment on Decision will issue this day.[44]

# # #

---

[43] *Cumberland Surety Ins. Co., Inc. v. Smith (In re Smith)*, 238 B.R. 664, 674 (Bankr. W.D. Ky 1999) (finding practice of "robbing Peter to pay Paul" as textbook example of defalcation on part of contractor).

[44] Although no allegations against Mrs. Foy are made in the Motion, she remains a party defendant to this action and, accordingly, final judgment cannot be entered until such time as the proceeding is dismissed as to her or tried on the merits.